COPE, J.
State Farm Mutual Auto Insurance Company appeals an adverse judgment in an insurance coverage action. We affirm.
I.
Plaintiff-appellee Antonio Gueimunde was insured by State Farm under an auto insurance policy. Plaintiff purchased medical payments coverage for $100,000. Plaintiff does not otherwise have health insurance coverage.
Plaintiff was in an automobile accident in 1997. He received a knee injury. After conservative treatment, the knee failed to *142 improve. The treating physician concluded that the plaintiff had a tear to the menisci in the left knee, which would require surgery to repair. State Farm’s physician examined the plaintiff and concluded that there was no tear. State Farm wrote the plaintiff a letter stating that it would make no further payments under the medical payments portion of the automobile insurance policy.
Plaintiff filed suit. State Farm argued that under the medical payments coverage, the plaintiff must first have the surgery done and incur the obligation to pay the medical bills before State Farm is obligated to make any payment under the policy.
After an evidentiary hearing, the trial court, in a May 8, 2000, order, entered a partial judgment for State Farm, saying: [T]he Court finds as follows:
1. That the issue before the Court is Plaintiffs request for advance authorization to undergo knee surgery allegedly necessitated as a result of injuries sustained in an automobile accident on November 5,1997.
2. That the Plaintiff at the time of said accident had both PIP and Medical Payment benefits with the Defendant State Farm and he exhausted his PIP benefits on October 21,1998.
3. That Plaintiffs treating Orthopedic surgeon, Harlan Chiron, M.D., has diagnosed tears of both menisci in the left knee which he relates to the automobile accident and for which he has recommended surgical repair.
4. State Farm has had a medical evaluation in conformity with the terms of its policy by an orthopedic surgeon who finds no evidence of meniscal tears and no basis for surgical intervention.
5. That, interestingly, MRI film studies which would be expected to resolve the issue of whether tears exist have received opposite interpretations from the parties!’] experts.
6. That Defendant State Farm’s representative based on their orthopedic evaluation advised their insured, the Plaintiff herein, that no further orthopedic care would be provided and their position at trial was that the requested surgical intervention was neither reasonable nor necessary, both of which are requirements for coverage under the policy.
7. That counsel for Defendant has also taken the position that there is no obligation on the part of his client to pay for the requested surgery until such time as bills are submitted but, of course, there can be no bills until there is surgery and there can be no surgery until it is authorized, unless the insured has other means to pay for surgery, which in this case is estimated to cost $15,000.00.
8. That the undersigned has a problem with defense counsel’s contention that his client’s obligation to pay medical bills only accrues when the bills are submitted, since most insureds cannot gain admission to hospitals for surgical procedures unless and until an insurance company gives authorization or confirms insurance coverage.
9. That in the instant case State Farm in accordance with the terms of the parties!’] contract (policy) had a medical evaluation performed, the results of which are dramatically opposed to those of Plaintiffs physician.
10. That the undersigned finds that State Farm is entitled to rely upon the opinions of their medical experts should they choose to do so when making a decision concerning authorization for medical treatment.
11. That were State Farm not entitled to make the above decision based on *143 their expert’s opinions it would serve no purpose to have a provision in their policies allowing for said evaluations.
12. That State Farm hasn’t fully ruled out a change of its position in this matter should additional information become available or if plaintiffs condition should change.
13. That should the Plaintiff proceed with surgery (without State Farm’s coverage), and the documented findings of said surgery support Plaintiffs position in this matter, then Plaintiff would be entitled to full reimbursement of all medical expenses and legal expenses related to this matter.
14. That the surgery, if performed will confirm the presence of tear(s) of the menisci and although [State Farm’s claims supervisor] testified if a tear exists it isn’t from the automobile accident, the court does find any tears to be related based upon no prior history of trauma or complaints concerning the plaintiffs left knee.
15. That the issue of entitlement to attorneys fees and court costs shall remain open since the prevailing party won’t ultimately be determined until such time as surgery is performed.
Based upon the forgoing it is hereby Ordered and Adjudged
A. That Plaintiffs Complaint for Breach of Contract (Authorization for Surgical Intervention) is denied without prejudice.
B. That the Court reserves jurisdiction for future determinations not inconsistent herewith and for the future award of attorneys fees and costs.
The plaintiff made -financial arrangements to have the surgery. The surgeon found that the plaintiff did, in fact, have a torn meniscus. The plaintiff submitted the bills for the surgery to State Farm, and State Farm paid them.
The trial court entered judgment in favor of the plaintiff, and found the plaintiff entitled to statutory attorney’s fees. State Farm has appealed.
II.
State Farm argues on this appeal that the plaintiffs entire lawsuit was premature. The target of the appeal is the finding of entitlement to attorney’s fees which is part of the judgment now under review.
Relying on personal injury protection (PIP) cases, State Farm takes the position that it has no obligation to make any payment under the medical payments portion of the automobile insurance policy until such time as the insured has received the medical treatment and submits a bill for it. See Rader v. Allstate Ins. Co., 789 So.2d 1045 (Fla. 4th DCA 2001); Cruz v. Union General Ins., 586 So.2d 91 (Fla. 3d DCA 1991).
It appears to us that State Farm has taken inconsistent positions regarding the question of the knee surgery. After the State Farm physician examined the plaintiff, State Farm, on December 11, 1998, sent out the following letter:
Thank you for helping us obtain a second opinion. Attached is a copy of the report we received from the independent medical examiner. In the examiner’s opinion, no further orthopedic treatment is necessary. Accordingly, we will be unable to consider any further orthopedic expenses or lost wages after 12/16/98. If there are unpaid bills, please send them to us for our consideration. This decision has been made based upon the information we have received to-date. If there is any additional information or if your condition should change, please notify us immediately.
(Emphasis added).
In this letter State Farm says in substance that the plaintiff did not have a tear *144 to the meniscus and did not need any surgery. We would have a different case if the State Farm letter had indicated that the plaintiff should have the surgery and then submit the surgeon’s report and bills. In that case, there might be an argument that the plaintiff had acted prematurely in bringing the lawsuit. But instead, the December 1998 letter indicated that State Farm simply was not going to make any additional payment for further orthopedic work on the knee. Under the circumstances present here, the plaintiff was entitled to bring suit when he did. See Peachtree Cas. Ins. Co. v. Walden, 759 So.2d 7, 8 (Fla. 5th DCA 2000) (When an insurer, which had thirty days to pay the bills submitted by the insured, informed the insured that it would not pay for further treatment, the insured was not required to “see if the insurer was only kidding” by waiting until the expiration of the thirty days before bringing an action).
We also think an insurer does have the obligation to preauthorize surgery in a situation in which the injury is within the coverage of the medical payments portion of the insurance policy. We agree with Judge Shapiro on this point.
The plaintiff in this case purchased $100,000 of medical payments coverage. The plaintiff does not have other health insurance coverage. Fortunately for the plaintiff in this case (who had received a personal injury judgment from the tort-feasor), he was in a position to make financial arrangements to have the knee surgery. But as Judge Shapiro pointed out, where there has been a serious or eata-strophic injury, many insureds will not be able to obtain admission to a hospital for an expensive surgical procedure “unless and until an insurance company gives authorization or confirms insurance coverage.”
The anomaly in this case was that the medical experts could not agree on whether the plaintiff actually had a tear to the meniscus, and thus there was a disagreement regarding whether the plaintiff had a compensable injury under the medical payments portion of the insurance policy. Where, as here, there is a dispute over coverage which cannot otherwise be resolved, resort to the court may become necessary to resolve the issue.
State Farm argues that the case law governing PIP coverage should apply in its totality to the medical payments portion of the insurance policy. State Farm points out that this was a 1997 accident. At that time there was a provision in the PIP statute which explained how certain medical payments amounts would be applied to PIP claims. § 627.736(4)©, Fla. Stat. (1997).* That provision has no bearing on the issue now before us.
We conclude that the plaintiff was entitled to bring suit when he did, and reject State Farm’s argument that the lawsuit was premature.
Affirmed.

 That provision states:
(f) Medical payments insurance, if available in a policy of motor vehicle insurance, shall pay the portion of any claim for personal injury protection medical benefits which is otherwise covered but is not payable due to the coinsurance provision of paragraph (l)(a), regardless of whether the full amount of personal injury protection coverage has been exhausted. The benefits shall not be payable for the amount of any deductible which has been selected.
This statutory provision has since been repealed. Ch.2001-271, § 6, at 2931, Laws of Fla.